IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DeANDRE GREEN,**

      **Plaintiff,**

v.

**TRACY JOHNSON, EFFRAIN RUEDA, and PATRICK MANSFIELD,**

      **Defendants.**

Case No. 12-cv-03158-DDC-KGS

### MEMORANDUM AND ORDER

Plaintiff DeAndre Green brings this civil rights action under 42 U.S.C. § 1983. He alleges that defendants Tracy Johnson, Effrain Rueda, and Patrick Mansfield used excessive force and thereby violated his rights under the Eighth Amendment to the United States Constitution. Plaintiff was an inmate at the El Dorado Correctional Facility in Butler County, Kansas, when the events giving rise to this lawsuit occurred. Defendants were employees at the facility. This case is now before the Court on defendants' Motion for Summary Judgment (Doc. 99). Plaintiff has filed a response (Doc. 113) and defendants have filed a reply (Doc. 116). After reviewing the summary judgment record and the arguments submitted by the parties, the Court grants defendants' motion in part and denies it in part.

    **I. Procedural Background**

Plaintiff filed his Complaint on July 20, 2012 (Doc. 1). It alleges § 1983 claims against defendants Ashley McKeen, Tracy Johnson, Effrain Rueda, and Patrick Mansfield both in their individual and official capacities. Each defendant moved for dismissal under Rule 12(b)(6) (Docs. 27 and 35). On March 29, 2013, the Court granted defendant McKeen's motion to dismiss but declined to dismiss the other defendants (Doc. 38). The Court, however, did grant

1

the remaining defendants' motion to dismiss plaintiff's official capacity claims based on Eleventh Amendment immunity (Doc. 23).  Plaintiff tried to circumvent the Eleventh Amendment's prohibition on official-capacity damage suits against state officials by moving to amend his complaint to seek declaratory and injunctive relief (Doc. 15).  The Court denied this motion as futile because his "proposed amended complaint present[ed] no facts which would support a plausible claim for declaratory or injunctive relief."  Doc. 23 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998) (holding that a "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future" (quotation omitted))).  As a result, only the individual capacity claims against defendants Johnson, Rueda, and Mansfield remain.  Defendants now move for summary judgment on each of those claims.

## II. Summary Judgment Standard

To prevail on a motion for summary judgment, a moving party must demonstrate that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When it applies this standard, the Court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245-46 (10th Cir. 2010)).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248)).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citing *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2003)). To meet this burden, the moving party "need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Id.* (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party sustains this initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.'" *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248-49. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 670 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013 (1992)).

Summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.  Undisputed Material Facts

The facts material to defendants' motion for summary judgment are set forth below. These facts are either uncontroverted by the parties or, where controverted, the Court has resolved them in the light most favorable to plaintiff as the non-moving party.

### A. Parties

Plaintiff is a former inmate of the El Dorado Correctional Facility in Butler County, Kansas (the "Facility"). He was incarcerated at the Facility beginning on February 9, 2010.

Defendants Johnson and Rueda were employed by the Kansas Department of Corrections ("KDOC") as corrections officers. Defendant Mansfield was employed by KDOC as a Lieutenant. All three defendants worked at the Facility on July 21, 2010, the day the events giving rise to this lawsuit occurred.

### B. The Three Uses of Force Against Plaintiff

On July 21, 2010, Officer Ashley McKeen (since dismissed as a defendant in this case, *see* Doc. 38) filed a Disciplinary Report against plaintiff for making threatening and intimidating statements the previous day. "Disciplinary Report No. 10-07-132" (Doc. 100-3 at 286-294). Specifically, the Disciplinary Report claims that plaintiff shouted at Officer McKeen, demanding that she open a door. When Officer McKeen instructed plaintiff to address her appropriately, plaintiff said "[R]emember what you started, this is on you." *Id.* Upon receiving the Disciplinary Report, Lt. Mansfield ordered Officers Johnson and Rueda to escort plaintiff to the captain's office to speak with him. Lt. Mansfield asserts that it is his normal practice to call an inmate into the captain's office following a Disciplinary Report to get the inmate's version of the story.

To prepare plaintiff for escort to the captain's office, Officers Johnson and Rueda (the "Officers") handcuffed plaintiff. They did not place him in leg restraints at this time. Plaintiff was cooperative and complied with the Officers' requests without any resistance. Before taking plaintiff to see Lt. Mansfield, however, the Officers first escorted plaintiff to the nurse's station. The Facility's normal procedure requires a nurse to check an inmate's health before he may be

4

cleared for segregated confinement. The Officers took plaintiff to the nurse's station before the captain's office because Lt. Mansfield already had decided to send plaintiff to segregated confinement before discussing the reported infraction with him.

After the nurse finished the medical evaluation, the Officers escorted plaintiff to Lt. Mansfield's office. There, Lt. Mansfield questioned plaintiff in a rude and abrasive manner about why he had threatened one of his officers. In response, plaintiff became agitated and behaved aggressively toward Lt. Mansfield. After tempers had escalated, Lt. Mansfield ended the meeting and instructed the Officers to proceed on his earlier order and place plaintiff in segregated confinement. This meeting was the last time Lt. Mansfield had any face-to-face interaction with plaintiff on that day.

Between plaintiff's initial escort from the captain's office and his ultimate placement in segregated confinement, plaintiff alleges that defendants used excessive force against him three times. *See* "Pretrial Order" (Doc. 85 at 3-4). Below, the Court describes the facts comprising each alleged episode of excessive force, in the light most favorable to plaintiff.

### 1. Escort Through the West-Gym Doors

As the Officers escorted plaintiff out of Lt. Mansfield's office, they forced plaintiff into a painful "chicken wing position," *i.e.*, they bent plaintiff's head forward and forced his arms upward behind his back. The painful upward pressure on plaintiff's arms caused him to stumble forward, making it difficult for him to walk or otherwise comply with the Officers' instructions. This forward-bent position also caused plaintiff's pants to fall down, making walking even more difficult. The Officers escorted him aggressively, first, through the door to the captain's office, then through a portion of the gymnasium, and, finally, out a second set of doors separating the gymnasium from the western exterior of the building. While forcing plaintiff to remain in this

forward bent-position, the Officers rammed plaintiff's head against the west-gym doors. Immediately after they rammed his head against the doors, plaintiff heard Officer Johnson say, "[W]e rammed your head you son of a bitch[,] how does that feel[?]" DeAndre Green Dep. (Doc. 113-1 at 27:14-16).

### 2. Incident at the Blind Spot Outside the West-Gym Doors

After exiting the gymnasium, Officers Johnson and Rueda continued to escort plaintiff toward the segregation cell houses. Meanwhile, in the captain's office, Lt. Randy Sherman radioed Officer Johnson and instructed him to "turn [plaintiff] around." Upon receiving Lt. Sherman's radio instructions, the Officers turned plaintiff around and forced him to an area just outside of the west-gym doors. This area is a "blind spot" in the Facility's video-surveillance system, meaning that the video surveillance does not extend to this area.[1] There, the Officers forced plaintiff to the ground. Officer Rueda gained control of plaintiff's legs while Officer Johnson controlled his upper body. The Officers punched plaintiff repeatedly in the head, side, and back, kicked him in the side and back, and tased him. The Officers knocked off plaintiff's boots while kicking and punching him. They admit that they forced plaintiff to the ground but assert that they did so because plaintiff was "flailing" and "flopping" around, throwing his head around, and attempting to kick them, which they perceived as threatening. The Officers deny that they punched, kicked, or tased plaintiff. They testified that such use of force would have been unnecessary based on plaintiff's behavior.

---

[1] Defendants dispute that this area is, in fact, a "blind spot." *See* Doc. 116 at ¶ 30. They correctly note that Plaintiff's Exhibit 12 (Doc. 113-12), which is a copy of the Facility's surveillance video, at least shows this area generally (a rotating surveillance camera captures this area about once every minute). Nonetheless, even when it shows this area, the surveillance footage does not do so with sufficient clarity to show conclusively what occurred there. The Court thus accepts plaintiff's assertion as true for summary judgment purposes that this area is a blind spot.

Approximately 30 seconds after the Officers had forced plaintiff onto the ground, Officer Troy Carrell heard yelling and cursing coming from this blind spot area. He responded from an area outside the west of the gymnasium. Although he was jogging initially, Officer Carrell slowed to a walk as he approached because, according to him, "Plaintiff still had his restraints on and no struggle or fight was occurring." Carrell Narrative Report (Doc 100-11 at 1). At around that same time, Officer David Conner and Lt. Sherman arrived from the inside. By the time these supporting officers arrived, plaintiff was lying on his side. These officers testified that they did not observe any kicking, punching, or other use of force against plaintiff. In total, plaintiff was on the ground for about one minute and forty seconds.

Because the Officers used force against plaintiff, they returned him to the nurse's station for a medical examination. Plaintiff reentered the gymnasium through the same doors about two minutes after his initial exit. The surveillance footage of this reentry shows that plaintiff's legs were still unshackled. Officers Johnson and Rueda, other unknown officers, and Officer Samuels—who was carrying plaintiff's boots—then escorted plaintiff to the same nurse's station where he was cleared initially for segregated confinement.

At the nurse's station, plaintiff communicated some information about his injuries to the nurse. Officers Johnson and Rueda, however, interfered with his medical examination by throwing him against the wall and taunting him by saying "[T]here ain't nothing wrong with you, you son of a bitch." DeAndre Green Dep. (Doc. 113-1 at 36:7-16, 39:6-11). Because the Officers interfered with the nurse's examination, plaintiff could not communicate complete information about his injuries, including that Officers had tased and beaten him. The Officers also prevented him from receiving any medical treatment at that time. In total, plaintiff's

7

medical examination lasted just one minute and twenty seconds. Before leaving the nurse's station, the Officers placed plaintiff's legs in shackles.

### 3. The Incident at the Strip Cell

Next, Officers Johnson, Rueda, and others took plaintiff to the "strip cell" so that he could change his clothes before going to segregated confinement. Once inside, the Officers forced plaintiff into the far corner of the cell. The interior of the strip cell is another blind spot in the Facility's video-surveillance system, but video surveillance does capture the area around the entrance to the cell. Plaintiff was inside this blind spot with a varying number of officers for about two minutes. Several other officers remained near the entrance of the strip cell. Inside the cell, Officer Rueda twisted plaintiff's handcuffs and stepped on his leg shackles.[2] The pressure forced the shackles into plaintiff's ankles, causing his ankles to bleed. Plaintiff felt like the Officers were torturing him. After plaintiff exited the strip cell, an officer took some pictures of him and then escorted him to the segregation cell. On July 23, 2010, after two days in the segregation cell, plaintiff sought medical treatment. A nurse put him on an Ibuprofen regimen, and noted an abrasion on his chin. On July 26, 2010, five days after the incidents, the KDOC Enforcement, Apprehensions, and Investigations ("EAI") unit took 38 photographs to document plaintiff's conditions. Defs.' Ex. 15" (Doc. 100-16). They show a laceration on plaintiff's ankles, the abrasion on his chin, and some bruises and markings on his back.

---

[2] Plaintiff alleges that Officer Johnson also participated in the strip-cell incident but plaintiff's deposition testimony does not reflect that he participated. *See* DeAndre Green Dep. (Doc. 100-3 at 40:10-13). The video evidence appears to show that Officer Johnson did enter the strip cell at least once during this incident. Surveillance Video (Doc. 113-8). The Court resolves this dissonance in plaintiff's favor because the evidence, viewed in the light most favorable to him, could support a finding that Officer Johnson participated in this use of force.

## IV. Analysis

Defendants seek summary judgment solely on the theory that each defendant is entitled to qualified immunity on plaintiff's § 1983 claim. Specifically, they argue that: (1) Lt. Mansfield is entitled to qualified immunity because he did not personally participate in any of the alleged constitutional violations, *see* Doc. 100 at 19; and (2) Officers Johnson and Rueda are entitled to qualified immunity because the force they used was constitutionally reasonable given the threat plaintiff posed, *see id.* at 33. The Court addresses each of these arguments in the following subsections A, B, C, and D, below.

### A. Qualified Immunity Standard

"Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bafford v. Nelson*, 241 F. Supp. 2d 1192, 1199 (D. Kan. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Saucier v. Katz,* 533 U.S. 194, 205 (2001) (holding that "[i]f the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). When a defendant asserts a qualified immunity defense on summary judgment, the burden shifts to the plaintiff to present facts that, if true, establish: (1) that defendant violated a constitutional right, and (2) that the constitutional right was a "clearly established" one. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). This is a "heavy two-part burden." *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). Plaintiff "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). Instead, he

9

"must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Id.*

The Court first addresses whether the right plaintiff alleges defendants violated—the right of an inmate to be free from excessive force—is a clearly established one. *See Pearson*, 555 U.S. at 236 (holding that a trial court can address the elements of a plaintiff's qualified immunity burden in either order). This question "is a legal one for the [C]ourt to decide." *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1255 (10th Cir. 2013).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment on individuals convicted of crimes." *Clemmons v. Bohannon*, 956 F.2d 1523, 1525 (10th Cir. 1992). It applies to the states by virtue of the Fourteenth Amendment. *Id.* (citing *Robinson v. California*, 370 U.S. 660, 662 (1962)). Long before July 2010, when defendants engaged in the conduct alleged in this lawsuit, the Supreme Court recognized that "'[t]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *see also Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (reaffirming *Whitley*). The Court thus concludes as a matter of law that the constitutional right plaintiff asserts here was clearly established when defendants allegedly violated it. And given this clearly established right, no prison official reasonably could believe that the unnecessary infliction of pain upon inmates, like the kind plaintiff alleges, constitutes permissible conduct.

Having determined that plaintiff had a clearly established right to be free from excessive force, the Court turns to the second aspect of plaintiff's qualified immunity burden at the summary judgment phase: whether plaintiff has stated sufficient facts that, if true, establish an Eighth Amendment violation. *Thomson*, 584 F.3d at 1312. Defendants' qualified immunity

defense thus turns on whether plaintiff has stated sufficient facts upon which a jury could conclude an Eighth Amendment violation has occurred.[3]

### B. Eighth Amendment Excessive Force Standard

To succeed on an excessive force claim under the Eighth Amendment, a plaintiff must show: "(1) that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation; and (2) that defendants acted with a sufficiently culpable state of mind." *Norton v. The City of Marietta, Okla.*, 432 F.3d 1145, 1154 (10th Cir. 2005) (citing *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003)). The first element "'is contextual and responsive to contemporary standards of decency.'" *Id.* (quoting *Smith*, 339 F.3d at 1212). "'The second element turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Smith*, 339 F.3d at 1212); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The "core judicial inquiry" generally focuses on the second element, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 7, 9 (citing *Whitley*, U.S. at 327). "This is true whether or not significant injury is evident." *Id.* at 9. (explicitly rejecting respondents' argument for incorporating a "significant injury" requirement for Eighth Amendment excessive force claims.) However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual'

---

[3] Plaintiff's burdens to establish an Eighth Amendment violation and to overcome qualified immunity both require him to present facts, which, if true, establish that defendants used "unreasonable" force. Nevertheless, the "reasonableness" inquiry in each context is distinct. *See Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1254-55 (10th Cir. 2013) (explaining that the Eighth Amendment reasonableness inquiry asks "whether, under all the circumstances, the officer's use of force was reasonable," while the qualified immunity inquiry asks "whether, in light of clearly established law, an objectively reasonable officer would believe his or her conduct was permitted"). The Court has analyzed these questions together here because it already concludes that no officer could reasonably have believed excessive force of the type plaintiff has alleged would be permissible. The Court notes that once a jury makes findings about what type of force the Officers actually used, the Court may revisit the reasonableness aspect of the qualified immunity analysis. *See infra*, Part V.

punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force." *Id.* at 9-10. Here, the factual basis for plaintiff's claim against Lt. Mansfield differs from his claims against the Officers. The Court thus considers the factual sufficiency of plaintiff's claims against each defendant separately.

### C.  Whether Lt. Mansfield is Entitled to Qualified Immunity

Defendants argue that Lt. Mansfield is entitled to qualified immunity because he did not personally participate in any of the alleged uses of force. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foot v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citation omitted). A plaintiff must establish that each defendant, through his own individual actions, violated the Constitution. *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760, 768 (10th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Simply asserting that a supervisor had the right to control certain employees is not enough to establish supervisory liability; rather, plaintiff must establish "'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1153 (10th Cir. 2006) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (further citation omitted). Nor is a supervisor "liable for an isolated failure of his subordinates to carry out prison policies . . . unless the subordinates are acting (or failing to act) on [his] instructions." *Rassel v. Werholtz*, No. 07-3290, 2009 WL 302078, at *4 (D. Kan. Feb. 6, 2009) (quoting *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998)). Under this qualified immunity burden, plaintiff, at a minimum, must show that "an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Serna v. Colorado Dep't of Corr.*, 108 F. App'x 570, 575 (10th Cir. 2004)) (citation and internal quotation marks omitted).

Here, plaintiff does not assert that Lt. Mansfield personally participated in any use of force against him. Other than their heated conversation following Officer McKeen's Disciplinary Report, plaintiff does not claim that he and Lt. Mansfield had any personal interaction at all on July 21, 2010. The only fact plaintiff asserts implicating Lt. Mansfield with the other officers' use of force is that he radioed an order to Officers Johnson and Rueda to "turn [plaintiff] around." Plaintiff claims that this order was a coded message, which instructed the officers to take plaintiff to a blind spot and abuse him. After learning in discovery that it was actually Lt. Sherman who ordered Officers Johnson and Rueda to return plaintiff to the captain's office (and conceding this fact, *see* Doc. 113 at ¶ 25), plaintiff modified his theory of Lt. Mansfield's involvement. He now claims that Lt. Mansfield ordered Lt. Sherman to relay the coded radio message to the Officers.

Plaintiff's primary factual basis for this modified theory of personal involvement by Lt. Mansfield is that defendants cannot *disprove* it. This is insufficient to survive summary judgment. Once defendants identified an absence of evidence to support plaintiff's allegation of personal involvement, summary judgment standards require plaintiff to identify admissible evidence establishing a genuine issue of fact for trial. *See Kannady*, 590 F.3d at 1169.

Plaintiff does cite two pieces of evidence to support his assertion that Lt. Mansfield participated in the use of excessive force against him: (1) evidence suggesting that Lt. Mansfield had decided to send plaintiff to segregated confinement before meeting with him in the captain's office; and (2) video evidence indicating that Lt. Mansfield was in the same office as Lt. Sherman when Lt. Sherman ordered the officers to "turn [plaintiff] around." But these facts, even if true, are insufficient to create a genuine issue of fact for trial on the question of Lt. Mansfield's personal involvement. They, by themselves, do not provide a basis for a rational

13

trier of fact to conclude that the requisite "affirmative link" exists between Lt. Mansfield's conduct and the Officers' use of force against plaintiff. And aside from his own speculation, plaintiff has set forth no other specific facts that could support such a finding. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 876 (10th Cir. 2004) (holding that "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment" (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999) (further citation omitted)). The Court concludes that plaintiff has failed to meet his qualified immunity burden on his § 1983 claim against Lt. Mansfield. The Court thus grants summary judgment on plaintiff's claim against Lt. Mansfield.

### D.  Whether Officers Johnson and Rueda are Entitled to Qualified Immunity

Although the summary judgment record establishes that the Officers personally participated in the alleged excessive force, the Officers argue that they too are entitled to qualified immunity because: (1) plaintiff's claim that he hit his head on the west-gym doors constitutes a *de minimis* use of force that did not violate his clearly established rights; (2) no reasonable trier of fact could conclude that the Officers used excessive force against plaintiff outside the west-gym doors; and (3) no reasonable trier of fact could conclude that the Officers applied more than a *de minimis* amount of force against plaintiff in the strip cell. The critical inquiry here is whether plaintiff's facts, when viewed in the light most favorable to him, establish a basis for a rational fact-finder to find that the officer's "used force 'maliciously and sadistically for the very purpose of causing harm' and not 'in a good faith effort to maintain or restore discipline.'" *Bafford*, 241 F. Supp. at 1200 (quoting *Hudson,* 503 U.S. at 5) (further citations omitted).

Applying these standards to plaintiff's claim that the Officers rammed his head into the west-gym doors, the Court concludes that this claim must survive summary judgment. The angles of the cameras do not capture plaintiff going through the west-gym doors and so the Court cannot resolve whether defendants used excessive or merely *de minimus* force during this event. Plaintiff also testified that defendant Johnson said "[W]e rammed your head you son of a bitch[,] how does that feel[?]." This statement, if true, could permit a jury to conclude the Officers' use of force was malicious and sadistic and not a good-faith effort to maintain discipline. Although defendants vehemently deny plaintiff's excessive force allegations, resolving this fact would require the Court to weigh conflicting testimony of plaintiff, defendants, and other witnesses. The Court cannot do so at the summary judgment stage. *See Anderson*, 477 U.S. at 255 (holding that "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict"). Moreover, "where there are disputed facts that bear on the use of force," the question "ordinarily goes to the jury." *Cavanaugh*, 718 F.3d at 1255. The Court thus concludes that summary judgment is inappropriate for this aspect of plaintiff's claim.

The Court reaches the same conclusion about the alleged use of excessive force in the blind spot outside the west-gym doors. The limited video-surveillance evidence over that area shows that a physical altercation of some type occurred there between plaintiff and the Officers. Defendants Rueda and Johnson also concede that they would not have needed to punch, kick, or tase plaintiff at any time during the escort. Thus, if it decides that they used such force, a jury reasonably could conclude that the Officers did so without a good-faith disciplinary justification.

15

The conflicting evidence about what actually occurred outside the west-gym doors precludes summary judgment on this claim.

Finally, defendants argue that no reasonable trier of fact could conclude that the officers applied more than *de minimis* force against plaintiff in the strip cell. As with the episodes above, the summary judgment facts do not resolve the issues material to this aspect of plaintiff's claim. The video evidence shows that several officers—including Johnson and Rueda— surrounded plaintiff when he was taken to the strip cell. The video evidence also shows that these officers entered the cell at various times. But the interior of the strip cell is a complete blind spot in the Facility's video-surveillance system. And both of the Officers concede that stepping on plaintiff's leg shackles would not have been necessary to maintain discipline. The summary judgment record does not resolve whether defendants applied this force or other types of excessive force while in the strip cell with plaintiff. As a result, whether the Officers actually applied excessive force against plaintiff in the strip cell is another material and disputed fact. In light of the conflicting testimony and evidence about what actually happened there, the Court cannot grant summary judgment against plaintiff's claim arising out of the events in the strip cell. *See Anderson*, 477 U.S. at 255; *Cavanaugh*, 718 F.3d at 1255.

### E.  Defendants' Perjury Allegations

Defendants also argue that the Court should grant summary judgment because plaintiff has "deliberately committed perjury." Doc. 100 at 26. In support, they cite evidence purporting to establish that plaintiff: (1) lied about the Officers using a taser against him, (2) lied about the extent of his injuries, (3) made inconsistent statements, and (4) made statements demonstrating a willingness to lie for financial gain. After reviewing defendants' "perjury" arguments, the Court

finds that they simply assert challenges to plaintiff's facts by citing contradictory evidence and attacking plaintiff's credibility.

Defendants base their argument that plaintiff lied about the Officer's use of a taser against him on two sources of evidence—the Officers' testimony that they do not carry tasers, and electronic use records maintained by the tasers themselves, which indicate that no taser was fired on July 21, 2010. The first fact relies on testimony that conflicts with plaintiff's testimony. The second relies upon electronic records, the accuracy of which plaintiff properly has controverted. *See* Doc. 113 ¶ 56 (asserting that "[t]he data from the taser documents indicates that some stun guns were fired even before they were manufactured, clearly showing the unreliability of the Defendants' documents regarding the taser and when they were actually fired"). Because plaintiff properly has disputed the factual predicate to this perjury allegation, the Court declines to resolve it on summary judgment.

Defendants' assertion that the EAI unit's photographs establish that plaintiff lied about his injuries also is not a fact the Court can resolve on summary judgment. The Court thus concludes, for summary judgments purposes, that the EAI photographs are sufficient to establish the existence of some physical injury to plaintiff. The extent of injury that these photographs establish, if any, is a factual dispute properly reserved for trial. The Court also notes that any purported inconsistencies between plaintiff's claimed injuries and his actual injuries are not necessarily material issues of fact. Plaintiff may still prevail on his Eighth Amendment claims even if a jury finds his injuries are not as serious as he alleges, or even if the injuries are not serious at all. *See Hudson*, 503 U.S. at 9.

Finally, defendants' last two perjury arguments—that plaintiff has revealed his willingness to lie for financial gain and that plaintiff has made prior inconsistent statements—

just seek to impeach plaintiff's credibility as a witness. "It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment." *Seamons v. Snow*, 206 F.3d 1021, 1026 (10th Cir. 2000); *see also Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1283 (10th Cir. 2003) (crediting only favorable aspects of plaintiff's inconsistent testimony for summary judgment purposes). This evidence, if admissible, is something defendants can present at trial. But the Court cannot consider it at the summary judgment stage. *See Todd v. Montoya*, 877 F. Supp. 2d 1048, 1100 (D.N.M. 2012) (denying plaintiff's request for additional discovery because the requested evidence was only relevant for impeachment purposes, which the court would not consider on summary judgment) (citing *Anderson*, 477 U.S. at 255). For now, the Court concludes that none of defendants' arguments that plaintiff perjured himself presents a reason to grant summary judgment against his claims.

### V. Conclusion

The Court grants defendants' motion for summary judgment on the claims against Lt. Mansfield but denies it on the claims asserted against Officers Johnson and Rueda. Disputed issues of material fact prevent the Court from concluding that the Officers are entitled to qualified immunity on plaintiff's excessive force claim. The Court notes that the factual disputes about the constitutional reasonableness of the Officers' conduct bear both on the existence of a constitutional violation and the application of qualified immunity. But once the jury resolves the disputed facts, the application of qualified immunity becomes a legal question. *Cavanaugh*, 718 F.3d at 1255.

The Court directs the parties to the Tenth Circuit's discussion in *Cavanaugh* of methods for submitting the qualified immunity facts to the jury. *Id.* at 1254-57 (discussing the following cases: *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002) (noting that "factual issues must be

decided by the trier of fact" and only then "can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella"); *Willingham v. Crooke*, 412 F.3d 553, 559-60 (4th Cir. 2005) (while "disputed material facts . . . must be submitted to a jury" the "legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the [C]ourt"); *Gonzales v. Duran*, 590 F.3d 855, 859-60 (10th Cir. 2009) (allowing either jury or judge to decide the qualified immunity question as long as the judge "define[s] the clearly established law for the jury" and "issues of disputed material fact are dispositive of the qualified immunity inquiry"); *Stephenson v. Doe*, 332 F.3d 68, 80-81 (2d Cir. 2003) (noting that if the "jury returns a verdict of excessive force," then the Court should make the qualified immunity decision based on the jury's determination through special interrogatories). The Court instructs the parties to review the alternatives discussed by the Circuit and to prepare argument for a final pretrial conference about how best to submit the disputed qualified immunity facts to the jury.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 99) is granted in part and denied in part. The Court grants defendants' motion for summary judgment on plaintiff's claims against Lt. Mansfield. The Court denies summary judgment on plaintiff's claims against Officers Johnson and Rueda.

**IT IS SO ORDERED.**

**Dated this 30th day of March, 2015, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**